AO 91 (Rev. 11/11)  Criminal Complaint

| | | | |
|---|---|---|---|
| AUSA: | Susan Fairchild | Telephone: | (313) 226-9577 |
| Agent: | ☑ Sarah Soles | Telephone: | (517) 570-5211 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
John Scott

Case: 2:23−mj−30288
Assigned To : Unassigned
Assign. Date : 7/12/2023
CMP: USA v SCOTT (MAW)

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 25, 2023__ in the county of __St. Clair__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(ii) | Transporting Illegal Aliens |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Sarah Soles, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: July 12, 2023

*Judge's signature*

City and state: Detroit, MI

Elizabeth A. Stafford, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Sarah A. Soles, declare the following under penalty of perjury:

1. I, Sarah A. Soles, am a Border Patrol Agent (BPA) with the United States Border Patrol and have been since June 22, 2009.  As a U.S. Border Patrol Agent, I am tasked with detecting, preventing, and apprehending undocumented aliens, smugglers of aliens, and illegal narcotics by maintaining surveillance and/or patrolling the international border with the United States and Canada.

2. I make this affidavit in support of a finding of probable cause that, on May 25, 2023, Defendant John SCOTT committed violations of Title 8 U.S.C. § 1324(a)(1)(A)(ii)- Alien Transporting.  This affidavit is based upon my personal knowledge, information provided by other law enforcement officers, and record checks of law enforcement and Department of Homeland Security databases.  This affidavit may not contain all the information gathered during the investigation of this incident.

3. On or about May 25, 2023, between the hours of 10:00 p.m. and 11:00 p.m., Detroit Sector Radio (KAK700), had notified Marysville Station Border Patrol Agents of several vessels traveling in the area of the Chematogan Channel, Walpole Island, Canada and Harsens Island, United States. The Chematogan is a common staging area for alien and narcotics smuggling from Canada to the United States because it is a very quick boat ride across the St. Clair River. In recent months, Marysville Border Patrol Agents have seen an increase in smuggling activity in that particular area.

4. Shortly after 11:00 p.m., Border Patrol Agent Dennis Karwowski boarded the ferry leaving Harsens Island in a marked Border Patrol vehicle to return to the mainland. As Agent Karwowski parked on the ferry, he observed a black Chrysler van with several passengers, bearing a Washington license plate of BZV3008. A registration check revealed that the vehicle was a rental. It is historically known to Border Patrol Agents that smugglers commonly use rental vehicles to carry out illegal activity, so they do not risk losing their personal vehicles to seizure.

5. Due to the vessel traffic in the area and the rental vehicle leaving Harsens Island with several passengers, Agent Karwowski followed the vehicle off the ferry and onto M-29.

6. As Agent Karwowski and the Black Chrysler van headed southbound, he alerted Border Patrol Agent Alan Merle that he was following the vehicle. Agent Merle, in an unmarked Border Patrol vehicle, was stationary further south and stayed there until the vehicle and Agent Karwowski passed by. Agent Karwowski stated that the vehicle was traveling well below the posted speed limit. As they passed by Agent Merle, he was able to see the driver and front seat passenger, as well as at least four or five subjects in the back of the van, all with masks on. Agent Merle stated that the backseat passengers were all looking forward very rigidly and it looked like no one was speaking to one another.

7. Agent Karwowski then decided to back off from following the vehicle. Agent Merle got behind the vehicle to see if there were any changes in behavior. At that time, the vehicle sped up, exceeding the posted speed limit for a couple miles. Agent Karwowski repositioned his marked vehicle behind the van again and the driver slowed again to speeds well below the posted speed limit. In addition, when the vehicle approached a flashing yellow traffic light, the driver came to a complete stop as if the light was red.

8. Due to the facts listed above, along with the recent smuggling trends in the area, the agents conducted a vehicle stop on the van in the 8200 block of Dixie Highway in Ira, Township. Upon approaching the vehicle, Agent Karwowski observed a total of seven occupants. One of the passengers in the rear of the vehicle appeared to be trying to conceal themselves by slouching in the seat, almost to the floor of the vehicle.

9. Agents Merle and Karwowski identified themselves as United States Border Patrol Agents. They questioned the driver, later identified as Noah Baldwin, and front seat passenger, later identified as John SCOTT, as to their reasons for being in the area and to their citizenship. Both subjects stated they were United States citizens from Detroit and that they came to the area "to smoke some weed."  When questioned about their relationship to the other passengers in the rear of the vehicle, Baldwin and SCOTT both stated that they "met them on the island and they asked for a ride".

10. Agents Merle and Karwowski then asked the passengers in the rear of the vehicle where they were from and for identification.  The subjects in the rear of the vehicle appeared unable to understand the question and advised that they did not speak English. They indicated that they were from Brazil.  Upon

2

receiving this information, Agents Merle and Karwowski again questioned Baldwin and SCOTT as to their relationship with the five Brazilian citizens in the rear of the vehicle. Again, Baldwin and SCOTT both stated that they did not know the subjects in the vehicle. At this time, both Baldwin and SCOTT were detained so the agents could safely conduct an immigration inspection on the remaining passengers.

11. Agents Merle and Karwowski then questioned the subjects as to their citizenship in the Spanish language, knowing some Brazilians can communicate in both the Spanish and Portuguese languages. Some of the subjects were able to understand Spanish and assisted the agents in communicating with the remaining subjects. All of the subjects presented identification from Brazil indicating they were Brazilian citizens.

12. Through further records checks, it was determined that four of the subjects, identified as Desiree Chaves Ferreira, Cleres Goncalves Da Silva, Silvio Antonio Borges and Marlucio Ferreira, did not have any immigration documents allowing them to be or remain in the United States legally. The fifth subject, Wagner Miranda Da Silva presented documents indicating that he was apprehended by Border Patrol entering California illegally and was released into the U.S. with an immigration court date.

13. The subject identified as Cleres Goncalves Da Silva was able to communicate to agents in Spanish and some broken English that he and three of the subjects had been brought from Canada on a boat about an hour earlier. He indicated that the men in the Black Chrysler van picked them up after the boat dropped them off on the island. All seven of the subjects were taken into custody and transported to the Marysville Border Patrol Station for further questioning and processing.

14. The four subjects that were smuggled across the St. Clair River from Canada to the United States were questioned using an interpreter in their native language of Portuguese. All four subjects were advised of their rights and all but one were willing to answer questions about entering the United States illegally. Cleres Goncalves Da Silva, Silvio Antonio Borges and Marlucio Ferreira all explained the details of their travels from Brazil to Toronto, Ontario, Canada with the intentions of finding a way to be smuggled into the United States.

15. The three men said that they paid individuals in Toronto to take them to the United States. All three subjects explained how they were transported from Toronto to an island in Canada where they were ultimately taken to a boat and brought across the St. Clair River. All three subjects readily admitted that they knew the manner in which they were entering the United States was illegal. The three men explained that they were told they would be picked up by a Black van when they made landfall in the United States and that they would be taken to a hotel, where arrangements would be made to transport them to their final destinations in the United States. The men stated that when they got off the boat, they walked a short distance and were met by a Black van with three males in it. They stated that one of the men was also Brazilian and spoke Portuguese to them and that the driver and front passenger were Black males that did not speak to them.

16. Miranda Da Silva explained how he had crossed the U.S./Mexico border illegally into California last summer and was apprehended by Border Patrol Agents. Miranda Da Silva was given an immigration hearing date and released into the United States. This information was corroborated through records checks. He stated that he has been living in Boston with family since his apprehension. When questioned about how he was involved with any of the subjects or the smuggling that occurred, he ultimately admitted that he was supposed to be picked up by a boat and taken to Canada. Miranda Da Silva explained that he had made arrangements to travel from Boston to Michigan and then taken by boat to Ontario, Canada.

17. Miranda Da Silva stated that he stayed in the Super 8 Motel in Roseville, Michigan for a couple nights and was notified that he would be picked up by a Black van and taken to where the boat would meet him and take him to Canada. Miranda Da Silva stated that he did not know who would be driving the van and that he doesn't believe he communicated with them, he only communicated with an unknown subject(s) in Canada. Miranda Da Silva said that he was told he would be picked up the morning of May 25, 2023, from the Super 8 Motel in Roseville. He explained that he was contacted early that morning and that there was a change in plans, and he would be picked up later that night instead. Miranda Da Silva explained that he was eventually picked up by the subjects identified as John SCOTT and Noah Baldwin later that night and they traveled to Harsens Island where he was to meet the boat to take him to Canada.

18. Miranda Da Silva stated that he only communicated with SCOTT by using Google Translate while in the van and their communication was minimal. He used Google Translate to confirm they were taking him to Harsens Island. When they reached Harsens Island, Miranda Da Silva said they drove around for a while and then they encountered the subjects that were brought across by boat from Canada. For unknown reasons, the boat had already left without him, so he stayed in the van.

19. SCOTT was advised of his rights and agreed to answer the Agents' questions. SCOTT stated that a few days before May 25, 2023, he was contacted by an individual with the username "momentocortez" on a telephone application called Signal. The man offered him money to give some people a ride from Harsens Island to the Super 8 Motel in Roseville. SCOTT agreed to pick the people up and claims that "momentocortez" was going to pay him via Venmo, although he never told him how much.

20. SCOTT and "momentocortez" communicated through the Signal app to coordinate where and when to pick the people up. SCOTT states that around 6:00 a.m. on May 25th, "momentocortez" asked him to pick a guy up at the Super 8 Motel in Roseville and take him to Harsens Island with him. SCOTT agreed but claims that he didn't know why he was driving the man to Harsens Island. SCOTT stated the man did not speak English, but he used Google Translate to ask him if he was taking him to Harsens Island. Soon after leaving the motel, SCOTT was contacted by "momentocortez" and told to hold off because there was something wrong with the boat. SCOTT claimed he wasn't sure what boat he was talking about, but didn't give it much thought at the time. He dropped the man off at the motel around 7:00 a.m. and went home.

21. SCOTT stated he received a call later that day around 5:30 p.m. from "momentocortez" telling him to pick the man up from the motel again later that night. SCOTT stated that at this point, he decided to ask his friend Noah Baldwin to come with him because he felt a little nervous. SCOTT said he asked Baldwin to drive because he was tired. SCOTT and Baldwin picked the same man up from the Super 8 motel around 8:45 p.m. and drove to Harsens Island. SCOTT was given an address on the island, which he was unable to locate. "Momentocortez" messaged him a new address and told him that the people had been dropped off and were waiting for them. SCOTT drove toward the new address, and he saw four subjects walking towards them. He stated the four subjects entered the vehicle and they were

5

speaking a language he did not recognize. He said he had no idea where they were from.

22. SCOTT explained that they drove back to the ferry and crossed back over to the mainland. He noticed there was a police vehicle behind them and that the subjects they had picked up seemed very nervous. This made both Baldwin and SCOTT nervous also, but they just wanted to get back to the Super 8 motel to drop them off. SCOTT said the police vehicle (Border Patrol) followed them for a few miles before pulling them over. SCOTT said that as they were getting pulled over, he thought that what they had been doing was illegal.

23. Based on the above information, I believe there is probable cause that John SCOTT, a United States Citizen, knowingly or in reckless disregard of the fact that an alien(s) has come to, entered, or remains in the United States in violation of law, transported, or moved or attempted to transport or move such alien(s) within the United States by means of transportation or otherwise, in furtherance of such violation of law on May 25, 2023, at or near Ira Township, Michigan, in violation of 8 U.S.C. §1324(a)(1)(A)(ii).

_____
Sarah A. Soles, Border Patrol Agent
U.S. Department of Homeland Security

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Elizabeth A. Stafford
United States Magistrate Judge